JOSEPH D. CANTERINO, Appellant, *v.* THE MIRAGE CASINO-HOTEL, a Nevada Corporation, dba THE MIRAGE, Respondent.

No. 30659

January 29, 2001

16 P.3d 415

*Goodman Chesnoff & Keach,* Las Vegas, for Appellant.

*Morris Pickering,* Las Vegas, for Respondent.

# OPINION

By the Court, SHEARING, J.:

Joseph Canterino sued the Mirage Casino-Hotel for damages incurred after being beaten and robbed in the hotel hallway. After a nine-day trial, the jury awarded Joseph Canterino $5,760,291.35 in damages for past and future physical pain and mental anguish, physical impairment, lost earning capacity and medical expenses. The Mirage filed a motion for a new trial. The district court issued a conditional order of remittitur, finding the jury award of damages excessive, and reducing the damage award to $1,500,000.00. Canterino did not accept the remittitur, and the district court ordered a new trial. Canterino appeals, seeking reinstatement of the jury award. The Mirage argues that a new trial is warranted on the grounds of an improper jury instruction, as well as improper arguments by Canterino's counsel. We conclude the jury verdict on the issue of liability should be reinstated, but that a new trial must be had on the issue of damages.

## DISTRICT COURT PROCEEDINGS

Canterino presented the following evidence. In April 1992, Canterino traveled from New York to Las Vegas with $100,000.00 to gamble. He reserved a room at the Mirage for the duration of his stay. On his second day at the Mirage, Canterino left his hotel room and was walking down the hallway when he was approached by a stranger. As Canterino glanced in the man's direction, another man hit Canterino in the head with a baseball bat. The two men repeatedly hit Canterino and stole his fanny pack where he kept his money. Canterino's attackers were never apprehended.

Canterino testified to his injuries, and presented extensive medical evidence of permanent physical, neurological and psychological injuries.

The Mirage presented evidence to show that it had no liability and, through cross-examination of Canterino's witnesses, attempted to challenge the cause, nature and severity of Canterino's injuries.

After jury instructions and closing arguments, the eight-person jury retired to deliberate. After deliberating for some time, the jury submitted a question to the district court. The jury asked: "If 6 (Jurors) agree that the defendant was negligent . . . can the obstaining [sic] 2 (Jurors)—participate in determing [sic] damages? Please advise?" Initially, the district court told the bailiff to contact the attorneys as required under NRS 16.140. The bailiff told the judge that the Mirage's lead attorney was unavailable but

she left the name of another attorney to contact. The judge decided not to contact the replacement attorney or Canterino's attorney and simply responded to the jury question, instructing that the two jurors voting against liability could not participate in the damage award determination. The jury returned a verdict in favor of Canterino for $5,760,291.35 about half an hour later.

The district court subsequently issued a conditional order of remittitur reducing the damage award to $1,500,000.00 on the basis of the following findings:

> 1. That the verdict returned by the jury in the amount of $5,760,291.35 was excessive, was shocking to the conscience and tainted by plaintiff's appeals to the jury which resulted in bias, passion and prejudice.
> 2. That the verdict was shocking in relation to the evidence as to the severity and extent of plaintiff's injuries.
> 3. That the plaintiff does not present visible injury that can support such a verdict.
> 4. That the verdict awarded by the jury is unreasonable in light of the cumulative evidence presented at trial.
> 5. That unless a remittitur is ordered by the court a fair and just resolution of the case cannot be reached.

Canterino refused to accept the remittitur. The district court set aside the jury verdict and ordered a new trial. Canterino appeals from that order.

## EXCESSIVENESS OF DAMAGES AWARD

The district court has the power under NRCP 59(a)(6) to order a new trial when excessive damages appear to have been given under the influence of passion or prejudice. This court reviews a trial court's order for a new trial that is conditional upon the plaintiff's refusal to accept an order of remittitur for abuse of discretion. *See Harris v. Zee,* 87 Nev. 309, 311, 486 P.2d 490, 491 (1971). On appeal, we accord deference to the trial judge's decision and reject a challenge to the judge's discretion if there is a material conflict of evidence regarding the extent of the damages. *Id.* However, if there is no conflict, the order to remit becomes suspect unless the amount awarded by the jury is so excessive as to suggest passion and prejudice. *Id.*

In this case, no conflicting evidence concerning the extent of Canterino's injuries or the amount of his monetary damages was offered by the Mirage. In fact, Dr. Ivan Bodis-Wollner testified for Canterino, even though he was one of the three physicians that the

Mirage hired as an expert to conduct independent medical examinations on Canterino. Dr. Bodis-Wollner, professor of neurology at State University of New York, director of the Parkinson Center-Movement Disorders and a physician board-certified in neurology and psychiatry, testified that he conducted tests which objectively determined that Canterino's brain and various nerve pathways were permanently damaged. Dr. Bodis-Wollner also confirmed that there is a strong association between agoraphobia-panic disorder and the type of neurological damage from which Canterino suffered.

The other doctors who testified for Canterino confirmed the permanency of the neurological damage, and the causal relationship between the objective physical damage and the psychological manifestations that Canterino and his doctors described. The uncontradicted evidence showed that Canterino suffered hearing, balance and pyramidal track impairment as a result of the neurological damage. He presented extensive evidence that he suffered psychological injuries that kept him virtually housebound, unable to work or participate in any of the sports or activities that he had previously enjoyed. A treating psychologist found that Canterino exhibited the most severe case of co-morbid panic disorder, agoraphobia and post-traumatic stress disorder that she had ever seen.

Not only did the Mirage present no evidence contradicting Canterino's medical experts' testimony, but all its evidence related to whether the Mirage provides reasonable security to its guests. In opening statements, the Mirage did not mention that it disputed Canterino's injuries, stating:

> But the interesting part of this case is it's a mystery; it's a mystery that—because the Mirage doesn't dispute Mr. Canterino was beaten. But where was he beaten; when was he beaten; by whom was he beaten and why?

The Mirage apparently only disputed liability.

In its conditional order of remittitur, the district court reduced the damages for past physical pain and mental anguish from the jury award of $500,000.00 to $50,000.00, for future physical pain and mental anguish from the jury award of $1,500,000.00 to $150,000.00, for past physical impairment from the jury award of $500,000.00 to $50,000.00, and for future physical impairment from the jury award of $1,500,000.00 to $150,000.00. The district court found the jury award "shocking in relation to the evidence as to the severity and extent of plaintiff's injuries." We cannot agree. The evidence showed that Canterino suffered a great amount of pain, anguish and impairment that would not diminish in the future. All the evidence supported the view that this forty-year-old man's life was essentially ruined, and the jury apparently

believed that. The damages awarded by the jury were not excessive considering the uncontradicted evidence at trial.

This court has held that damages for pain and suffering are peculiarly within the province of the jury. In *Stackiewicz v. Nissan Motor Corporation,* 100 Nev. 443, 454, 686 P.2d 925, 932 (1984), this court stated that the trial court cannot revisit a jury's damage award unless it is "flagrantly improper."

> In actions for damages in which the law provides no legal rule of measurement it is the special province of the jury to determine the amount that ought to be allowed, so that a court is not justified in reversing the case or granting a new trial on the ground that the verdict is excessive, unless it is so flagrantly improper as to indicate passion, prejudice or corruption in the jury. . . . The elements of pain and suffering are wholly subjective. It can hardly be denied that, because of their very nature, a determination of their monetary compensation falls peculiarly within the province of the jury. . . . We may not invade the province of the fact-finder by arbitrarily substituting a monetary judgment in a specific sum felt to be more suitable.

*Stackiewicz,* 100 Nev. at 454-55, 686 P.2d at 932 (quotations and citations omitted). The mere fact that a verdict is large is not conclusive that it is the result of passion or prejudice. *Id.* (citing *Beccard v. Nevada National Bank,* 99 Nev. 63, 66 n.3, 657 P.2d 1154, 1156 n.3 (1983)).

In view of the uncontradicted evidence of Canterino's damages, it cannot be said that the jury's award was excessive. Furthermore, one of the district court's findings in support of reducing damages was that "the plaintiff does not present visible injury that can support such a verdict." There is no dispute that the injury was not outwardly visible since the principal injury was neurological and the brain damage resulted in a total change in personality and lifestyle. The finding that an injury is not outwardly visible is an inappropriate basis for ordering a remittitur.

The district court also found that the plaintiff's improper appeals resulted in jury bias, passion and prejudice. It is true that Canterino's counsel made inappropriate and unprofessional appeals to the jury. During closing arguments, he discussed his personal experiences and opinions; he personally attacked opposing counsel; he mentioned a verdict in another case; he mentioned the wealth of the Mirage. However, to mandate reversal, the prej-

udicial comments must permeate the trial to the degree that this court is convinced that passion and prejudice influenced the jury's verdict. *See Barrett v. Baird,* 111 Nev. 1496, 1515, 908 P.2d 689, 702 (1995); *cf. DeJesus v. Flick,* 116 Nev. 812, 7 P.3d 459 (2000) (damage award after inflammatory argument exceeded proof). Canterino's counsel's comments, although clearly inappropriate, were not so pervasive as to taint the jury verdict when considered against the overwhelming evidence supporting the jury verdict. Furthermore, although Mirage counsel now alleges that the improper comments were egregious, Mirage trial counsel neither objected to most of the comments nor made a motion for a mistrial. The objections which were made were sustained. The election not to seek a mistrial is simply a matter of trial tactics.

Since the jury's award was amply supported by the evidence and counsel's conduct did not permeate the trial and taint the verdict, we conclude that the district court abused its discretion in ordering a new trial on the basis that Canterino refused to accept the remittitur. As discussed below, however, since not all jurors participated in the damages determination, the district court properly granted a new trial with respect to damages, albeit for the wrong reasons.

### JUROR PARTICIPATION

During jury deliberations, the jurors sought clarification of whether the two jurors who disagreed on liability could participate in the determination of damages. Without notifying counsel, the district court judge responded that the dissenting jurors could not participate.

NRS 16.140 requires that any answer to a juror question "shall be in the presence of or after notice to the parties or counsel." However, if the judge answers the juror question correctly, failure to notify the parties or counsel is harmless error. *See Cavanaugh v. State,* 102 Nev. 478, 484, 729 P.2d 481, 485 (1986). We conclude that the error was not harmless since the answer was incorrect.

Whether jurors who do not agree that there is liability should participate in the deliberation of damages is an issue of first impression in Nevada. While the Nevada Constitution does not address the necessary number of parties to arrive at a valid verdict, NRS 16.030(4) provides that "[t]he jury must consist of eight persons, unless the parties consent to a lesser number." This language suggests that all jurors should participate in all phases of deliberations. Even if a juror believes that there is no liability,

there is no reason why that juror cannot effectively evaluate the evidence of damages. As the Arizona Supreme Court stated in *Perkins v. Komarnyckyj,* 834 P.2d 1260, 1263 (Ariz. 1992):

> The principle is simple. The constitutional right of trial by jury carries with it the right to have every issue tried by the jury that has been empaneled, not by two-thirds of that jury, or three-fourths, or any other fraction. . . . The jurors who have been empaneled are required to consider and decide each of the issues submitted to them by the court. The cases cited establish that jurors who find themselves in a minority on one issue may not withdraw or be excluded from consideration of the other issues in the case.

We will not uphold a jury verdict that does not represent the deliberations of all jurors. Not all of the jurors need agree. A verdict may be rendered by three-fourths of the jurors. Nev. Const. art. 1, § 3. However, all the jurors must participate in the deliberations.

Only the damages portion of the jury verdict is flawed by the district court's erroneous instruction. It is clear that the jury determined that the Mirage was negligent after listening to numerous witnesses, argument on both sides and proper instructions. Therefore, although we reverse the district court's new trial order as it relates to liability, we affirm the order as it relates to damages and remand this matter for a new trial on damages. *See Hotel Riviera, Inc. v. Torres,* 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981).

## DISQUALIFICATION OF JUDGE

Canterino has alleged that the district court judge should be disqualified for bias. The disqualification of the trial judge is a matter to be determined in the district court pursuant to district court rules; therefore, we do not address this argument.

## CONCLUSION

We reverse the district court's order granting a new trial as it pertains to liability and affirm the order as it pertains to damages. This matter is remanded to the district court for a new trial on the damages issue.[1]

BECKER, J., concurs.

---

[1]THE HONORABLE MYRON LEAVITT, Justice, voluntarily recused himself from participation in the decision of this appeal.

MAUPIN, C. J., concurring:

I agree that the district court's order granting a new trial must be affirmed as to damages but reversed as to liability. I write separately to address the inference that may be drawn from the separate opinion of ROSE, J., that we must address all claims of attorney misconduct in comparison with those addressed in *DeJesus v. Flick.*[1] In my view, claims of plain error arising from attorney misconduct should only rarely implicate the analytical construct of *DeJesus.*

Notwithstanding the resolution of a very discrete fact pattern in *DeJesus,* the general rule of appellate review in this state holds that trial counsel must perfect objections on the record to preserve a record on appeal. We have also traditionally agreed with the proposition articulated by other state courts that, "[g]enerally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished."[2] Thus, it is only in extreme cases that a trial court cannot adequately defuse an act of impropriety committed in the presence of a jury.[3]

Reversal under the plain error doctrine based upon claims of attorney misconduct to which no objection is lodged is only appropriate when we can clearly determine from the record that the verdict obtained is objectively unreliable.[4] However, given the divergence of opinion within this court over this appeal, as well as the four-to-three split of this court in *DeJesus,* what constitutes objective non-reliability can be the subject of reasonable intellectual or philosophical differences. The dissents here and in *DeJesus* demonstrate the confusion that can occur when we, on a case-by-case basis, make these difficult determinations in the context of published opinions. Thus, we should engage in plain error analysis of misconduct to which no objection has been made with great care, and with the understanding that discrete patterns of misconduct do not set the standard for evaluating plain error. Rather, the nature of the conduct must be weighed in the individual case along with whether the conduct has had a real effect on the reliability of the verdict rendered by the jury. In this, we must concede that no litmus test for evaluating these matters is possible.

I also suggest that we operate from the premise or presumption

---

[1]116 Nev. 812, 7 P.3d 459 (2000).

[2]*Horn v. Atchison, Topeka and Santa Fe Railway Co.,* 394 P.2d 561, 565 (Cal. 1964); *see also DeJesus,* 116 Nev. 812, 826, 7 P.3d 459, 468-69 (Rose, C. J., dissenting).

[3]*Id.*

[4]*DeJesus,* 116 Nev. at 816, 7 P.3d at 464-65.

that, in civil cases, failures to object or seek a mistrial in connection with attorney misconduct are the result of tactical or strategic choices by trial counsel. When failure to object or seek a mistrial can be reasonably attributed to tactical choices of trial counsel, we need not reach the question of plain error absent the most egregious misconduct resulting in a verdict that is clearly and objectively unreliable.

In this case, as an apparent matter of trial tactics, defense counsel chose to let much of the conduct complained of go unchallenged either by way of objection and a request for admonishment of the jury or a request for a mistrial. The record below suggests that defense counsel could have reasonably concluded that the histrionics of Cantarino's counsel were having a negative rather than a positive effect on the jury. This, however, turned out not to be the case. The jury verdict in this case was the result of a calculated risk taken by an experienced attorney retained at the election of the client. We should not intervene to disturb this kind of dynamic in civil cases.

Given that the failure to object or seek a mistrial was so arguably a matter of trial tactics, any issue arising from the alleged misconduct in this case was waived. Thus, we need not undertake a comparison of the conduct below to that discussed in *DeJesus*. Also, as noted by AGOSTI, J., in her separate opinion herein, the real issue in these matters does not, of necessity, involve a comparison of conduct, but rather, involves the net effect of the misconduct on the verdict actually obtained.

AGOSTI, J., concurring:

I concur with the majority but write separately to underscore what I believe is the crucial difference which distinguishes this case from *DeJesus v. Flick*.[1]

The record in *DeJesus* objectively demonstrated that the jury had disregarded the evidence in arriving at its verdict. Flick, the plaintiff, had proved future medical expenses of, at best, $21,000.00. Plaintiff's counsel miscalculated his proof and argued to the jury that he had proven between $30,000.00 and $35,000.00 in future medical expenses. The jury awarded Flick future medical expenses in the extraordinary sum of $100,000.00. So, despite DeJesus's failure to object to plaintiff's counsel's egregious and improper closing arguments, this court determined that it could review as plain error the trial court's decision to deny DeJesus's motion for a new trial. The error was plain, not because the verdict was large, but because it was objectively unreliable.

---

[1] 116 Nev. 812, 7 P.3d 459 (2000).

In the case at hand, it cannot be said that the jury's verdict was objectively unreliable, only that it was large. The jury's verdict was well within the range of the evidence produced. The trial judge happened to disagree with the size of the verdict. His disagreement is a far cry from a " " " "conviction that the jury was influenced by passion and prejudice in reaching its verdict." ' "[2] The *Barrett* standard for testing whether attorney misconduct warrants action requires the court to examine the misconduct to determine if its "flavor" sufficiently permeates an entire proceeding so as to warrant the conviction that the verdict was the product of passion and prejudice.[3] Under the *Barrett* standard, the movant need not prove that the result would have been different absent the misconduct.[4] However, *Barrett* did not address the application of the standard when no objection has been made to the perceived misconduct.

I believe that when no objection has been made, the party seeking a new trial must establish, as a predicate to relief, that the verdict is objectively unreliable. The Mirage is unable to establish that the verdict is outside the evidence. The verdict in this case is not objectively unreliable. In *DeJesus,* it was plain, clear and undeniable that the jury ignored the evidence of future medical expenses and awarded Flick four to five times more than she had proved. The *DeJesus* verdict demonstrated both "[m]isconduct of the jury or prevailing party" and that "[e]xcessive damages . . . have been given under the influence of passion or prejudice" as required in order to grant a new trial under NRCP 59(a).

The result reached in this case is correct. The district court did abuse its discretion in ordering a new trial on liability when Canterino rejected the court's remittitur. I also agree, however, that reversal is warranted since all jurors did not participate in the damages verdict.

ROSE, J., with whom YOUNG, J., joins, concurring in part and dissenting in part:

I concur in the majority opinion, but dissent from the conclusion that the improper and inflammatory remarks of counsel did not taint the jury verdict. The improper arguments were numerous and committed throughout the trial. These comments were so prejudicial that the district court granted the Mirage's motion for

---

[2]*Barrett v. Baird,* 111 Nev. 1496, 1515, 908 P.2d 689, 702 (1995) (quoting *Kehr v. Smith Barney, Harris Upham & Co., Inc.,* 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting *Standard Oil of California v. Perkins,* 347 F.2d 379, 388 (9th Cir. 1965))).

[3]*Id.*

[4]*Id.* at 1515, 908 P.2d at 702.

a new trial and found, in its conditional order of remittitur, that Canterino's attorney's misconduct "resulted in bias, passion, and prejudice." Following the recent dictates of *DeJesus v. Flick,* 116 Nev. 812, 7 P.3d 459 (2000), I believe that we are compelled to affirm in totality the order granting a new trial.

In order to preserve a contention for appellate review, an attorney is typically required to make specific objections to improper argument. *See Beccard v. Nevada National Bank,* 99 Nev. 63, 66, 657 P.2d 1154, 1156 (1983). Where attorney misconduct is of such an "inflammatory quality" and of such a "sheer quantity" that it amounts to plain error, however, review is appropriate without regard to the opposing party's objection. *See DeJesus,* 116 Nev. at 816, 7 P.3d at 462. In so reviewing, reversal is warranted upon our finding that the prejudicial comments so permeated the trial that we are convinced that the jury's verdict was influenced by passion and prejudice. *See Barrett v. Baird,* 111 Nev. 1496, 1515, 908 P.2d 689, 702 (1995).

In this case, the Mirage did object to some of Canterino's attorney's impermissible statements, including his comment in closing about the "tremendous, tremendous difficulty it is for somebody like [Canterino] to fight the most powerful, richest hotel-casino in the world, the Mirage." It is misconduct for an attorney to deliberately attempt to appeal to the economic prejudices of the jury by commenting on the wealth of the defendant. *See, e.g., Hoffman v. Brandt,* 421 P.2d 425, 428 (Cal. 1966). Thus, the Mirage's objection to the prejudicial comment was properly sustained by the district court.

Canterino's attorney engaged in many other unobjected-to instances of misconduct that support the district court's order for a new trial. As required by *DeJesus,* then, we should at a minimum, assess these instances to determine whether they are so numerous in quantity and inflammatory in quality to amount to plain error. *See DeJesus,* 116 Nev. at 816, 7 P.3d at 462.

First, we should examine the other objectionable statements Canterino's attorney made about the wealth of the Mirage. These statements include commentary about the money the Mirage spent on expert witnesses and security; commentary on the inability of the wealth of the Mirage to restore Canterino's health; and commentary about the inability of the Mirage's millions to depict Canterino's housebound status as phony. All of these statements were inflammatory and keenly calculated to prejudice the jury.

Next, we should look to other statements made during closing argument that may have been improper—including, references to the "McDonald's coffee" case where a woman received $3 million in damages, comments on the credibility of Mirage's counsel, and statements of personal opinion.

In this case, Canterino's attorney argued: "I talked to you about that McDonald's case. That woman got burned and she got $3 million. And I don't know whether it was right or not. That jury decided that's what they thought was right. You're the jury here. You have to decide what's right." The comparison that Canterino's attorney built in this argument is prejudicial and completely improper. There is no logical connection between this case and the McDonald's case except that Canterino's attorney was attempting to expand the jury's concept of a reasonable award. We should not condone this type of argument. *See Wright & Ford Millworks, Inc. v. Long,* 412 So. 2d 892, 894 (Fla. Dist. Ct. App. 1982) (holding that an attorney's comparison of jury awards in other cases to the present case was improper and prejudicial).

Additionally, Canterino's attorney argued:

> How bad do they want to win? The chief of security told us he lied because his lawyer told him to lie. That's how bad they want to win. They will perjure themselves.
>
> Miss Ellsworth [Mirage counsel] told you just a minute ago—she had repeated it during the case, the second or third time I've heard it in this case—the same lie over and over and over.

In making these comments, Canterino's attorney strayed from permissible argument to a purposeful attack on opposing counsel portraying her as a liar and perjurer. The design of this closing argument was to inculcate the jury with a belief that the Mirage's attorney was untrustworthy. In doing so, the argument sought to inflame the jury in order to obtain a verdict on the basis of personal prejudice instead of on the weight of evidence provided at trial. *See Las Palmas Assocs. v. Las Palmas Ctr.,* 1 Cal. Rptr. 2d 301, 315 (Ct. App. 1991); *Thomas v. Dalpos,* 326 N.E.2d 42, 46 (Ill. App. Ct. 1975); *Board of County Rd. Comm'rs of the County of Wayne v. GLS LeasCo, Inc.,* 229 N.W.2d 797, 800 n.3 (Mich. 1975); *Tucker v. Kansas City S. Ry.,* 765 S.W.2d 308, 310 (Mo. Ct. App. 1989) (holding that it is improper, unethical, and prejudicial to make personal attacks on opposing counsel or witnesses).

Further, Canterino's attorney told the jury:

> You know, I'm going to tell you one last thing before I finish up with this. One thing happened in this case, one thing was said in this case that absolutely—I mean, I just couldn't stand it.
>
> Dr. Basili told us that Mr. Canterino one snowy day had to stand by the window and watch his mother go outside and shovel snow, and she slipped and she hurt herself. . . .
>
> My father died when I was a small boy. I know what it is

> to be raised by your mother. I can imagine what Mr. Canterino felt not being able to go out and shovel snow and to watch his mother slip and fall and hurt herself. . . .
>
> But Miss Ellsworth, she said to Dr. Basili, how old was she, 55? There was nothing from preventing her from going out there doing it, was there?
>
> That's cold, ladies and gentlemen. That's the Mirage.

As with previous statements made by Canterino's attorney, this statement was designed to personally attack the opposing attorney and to discredit her before the jury. The added hyperbole that the Mirage is ''cold'' was simply an attempt to prejudice the jury against the Mirage not on the basis of facts, but through inflamed emotion. Canterino's attorney's opinion was not relevant to the trial, nor was it to be considered by the jury. *See Betts v. Manville Personal Injury Settlement Trust,* 588 N.E.2d 1193, 1216 (Ill. App. Ct. 1992) (holding that it is prejudicial error for an attorney to discuss personal experience or personal opinion in closing argument).

Although the Mirage failed to object to the impermissible commentary regarding the Mirage's wealth, the ''McDonald's coffee'' case, the credibility of counsel, and Canterino's attorney's personal opinion, I believe that these instances of misconduct are so numerous and inflammatory that they amount to plain error. Further, Canterino's attorney's arguments are not only prejudicial, they exceed the boundaries of acceptable professional conduct.

Canterino's primary injuries from the attack at the Mirage were neurological damage that caused tingling in his feet, relatively minor optic nerve damage and hearing loss, and psychological problems including post-traumatic stress disorder, panic disorder and agoraphobia that prevented him from traveling more than a few blocks from his house. His treating psychiatrist stated that his panic disorder had subsided, but he continued to be apathetic. Canterino and his experts claimed that these maladies made him totally disabled and unemployable. Based upon this evidence, the jury awarded the following damages:

Physical pain and mental anguish in
the past ..........................................................................$ 500,000.00

Physical pain and mental anguish in
the future ........................................................................1,500,000.00

Physical impairment in the past.....................................500,000.00

Physical impairment in the future...........................1,500,000.00

Loss of earnings in the past..........................................250,000.00

| | |
|---|---|
| Loss of earning capacity in the future | 1,211,250.00 |
| Medical expenses in the past | 55,139.55 |
| Medical expenses in the future | 243,901.80 |
| Total | $5,760,291.35 |

The district court judge took strong exception to the verdict and the claim that Mr. Canterino was totally disabled.

> Canterino . . . is far from totally disabled. What Canterino can do is walk very well, possibly run (in court he displayed this ability when he literally sprinted from the witness stand back to his chair), has the use of both arms and legs, thinks for himself, communicates with others, can both read and write, has functionally good eyesight, and can care for himself.

In trial testimony, Canterino admitted that he flew alone from New York to Las Vegas for trial and walked each day from his hotel four blocks away to the courthouse.

Standing individually, the instances of misconduct may not warrant reversal; when assessed cumulatively under the precept of *DeJesus,* however, the misconduct so permeated the proceeding that I believe the jury verdict was based, at least in part, on passion and prejudice rather than on the evidence presented at trial.

Accordingly, I believe that the district court's issuance of the conditional order of remittitur was not an abuse of discretion and that its order for a new trial should be affirmed.