JOSEPH D. CANTERINO, Appellant, v. THE MIRAGE CASINO-HOTEL, a Nevada Corporation, dba THE MIRAGE, Respondent.

No. 30659

March 19, 2002                                    42 P.3d 808

[Rehearing denied August 27, 2002]

Shearing, J., dissented.

*Goodman Chesnoff & Keach,* Las Vegas, for Appellant.

*Morris Pickering,* Las Vegas, for Respondent.

## OPINION ON REHEARING

By the Court, Young, J.:

On January 29, 2001, we issued an opinion affirming in part and reversing in part a district court order granting a new trial in this personal injury action, and remanding for a new trial on the

issue of damages only. We subsequently granted respondent's petition for rehearing, and we now modify our previous opinion and remand for a new trial on the issues of both liability and damages.

The circumstances of this case are fully set forth in *Canterino v. The Mirage Casino-Hotel*.[1] In brief, Joseph Canterino sued the Mirage Casino-Hotel for damages after he was beaten and robbed in the hotel, and the jury awarded him more than five and one-half million dollars. The district court found the award excessive, reduced it to one and one-half million dollars and issued a conditional order of remittitur. Canterino rejected the remittitur, and the district court ordered a new trial. Canterino appealed, seeking reinstatement of the jury award. We concluded that a new trial on the issue of damages was necessary because the district court erred by instructing the jury, ex parte, that the two jurors who voted against finding the Mirage liable could not participate in the damage award determination. We limited the scope of the new trial to the issue of damages.

We granted rehearing for the limited purpose of considering whether the new trial should encompass the issue of liability as well as the issue of damages. In our previous opinion we quoted *Perkins v. Komarnyckyj*,[2] an Arizona Supreme Court decision, in support of our decision that all jurors must participate in all jury deliberations. However, we did not follow *Perkins'* holding that all issues must be retried on remand following an erroneous ex parte jury instruction that damages should be decided only by the jurors who agree on liability. Instead, we concluded that only the damages portion of the jury verdict was flawed by the district court's erroneous instruction in this case. Having reconsidered the matter, we conclude that *Perkins'* holding that all issues must be retried is the better-reasoned decision.

In *Perkins,* a patient sued his dentist and his periodontist for malpractice, alleging that they failed to diagnose a squamous cell carcinoma in its early stages and that the resulting delay in treatment significantly reduced his chance of survival.[3] The patient died during the jury trial, and the complaint was amended to an action for wrongful death, with the patient's survivors substituted as plaintiffs. During deliberations, the ten-person jury sent the judge some written questions. The judge provided the jury with written answers, without informing the parties that the jury had asked questions or consulting them regarding the proper answers.[4]

---

[1] 117 Nev. 19, 16 P.3d 415 (2001).

[2] 834 P.2d 1260 (Ariz. 1992).

[3] 834 P.2d at 1261.

[4] *Id.*

One question was particularly important; the jury asked: "If any jurists [sic] should find for the defendants, should those jurists take part in the determination of the percentage of liabilities and damages?" The judge responded that "[t]he jurors who agree on liability are the ones who should fix damages and sign the form of verdict."[5] The jury returned a verdict in favor of plaintiffs; eight jurors found against both defendants and two jurors found in favor of both defendants. The jury decided that the plaintiffs' damages totaled $1,098,054, and that the dentist was 67% at fault, the periodontist 33% and the patient 0%.[6]

On appeal, the court of appeals ruled that the trial court erred by answering the jury's note without notifying the parties and by instructing that the jurors who voted against the defendants' liability were not to participate in the deliberation of the remaining issues. The court of appeals affirmed the judgment on liability, since all jurors had participated in that determination, but reversed the damages award and remanded for retrial on the damages issue alone.[7]

The Arizona Supreme Court granted review to determine whether the entire judgment must be reversed and remanded when the trial judge communicates ex parte with jurors, and erroneously directs those jurors who voted in favor of the defendants on liability not to participate in deciding damages, or whether the case was properly remanded for retrial on the issue of damages alone.[8] We are faced here with precisely the same question.

The Arizona Supreme Court decided that the entire judgment must be reversed. Specifically, the court concluded that "the judge's error was inherently prejudicial, and no further showing is needed to require reversal, remand, and retrial on all issues."[9] In reaching this conclusion, the court observed that a jury's decision on an issue is not final until the jury's verdict is submitted to and accepted by the trial court.[10] The court explained:

> [U]ntil they return the verdict, the jury may decide again and again to reconsider one or all of the issues in the case. For example, a jury might vote that both defendants in a tort case are liable, and then later, in the course of allocating percent-

[5]*Id.*

[6]*Id.*

[7]*Id.* at 1262.

[8]*Id.*

[9]*Id.* at 1264.

[10]*Id.* (citing *Ralston v. Stump,* 62 N.E.2d 293, 294 (Ohio Ct. App. 1944) ("Until the conclusion of the jury is submitted to and accepted by the court, it is nothing more than a tentative agreement among the jurors, subject to revocation or change at any time before such submission and acceptance."), and 75B Am. Jur. 2d *Trial* § 1752, at 521 & n.95 (1992)).

ages of fault or fixing damages, conclude that one defendant was not really liable at all. Consequently, we do not and cannot know or assume that at any point in the deliberations, a majority of the jury unalterably concluded that Defendants were liable for [the patient's] death. Defendants were deprived of their right to have all of the jurors participate in deciding all of the issues.[11]

The Arizona Supreme Court's observations closely parallel this court's oft-repeated observations about the impermanent nature of a judicial decision before it is reduced to writing and filed by the court clerk. For example, in *Rust v. Clark County School District*,[12] we noted that until the entry of a final judgment, the district court remains free to reconsider and issue a written judgment different from its oral pronouncement; thus, only a final judgment has any effect and only a final judgment may be appealed. We agree with *Perkins'* reasoning that a jury's decision is similarly impermanent until it has been submitted to and accepted by the trial court; and we adopt *Perkins'* holding that an erroneous ex parte instruction excluding jurors who disagreed on the liability issue from deciding the damages issue requires a new trial on all issues.

We therefore modify our previous opinion regarding the juror participation issue, and we remand for a new trial on all issues.[13]

BECKER, J., and GIBBONS, D. J., concur.

MAUPIN, C. J., concurring:

For the reasons stated by the majority with regard to the trial court's communication with the jury, I agree that this case should be remanded for a full trial on both liability and damages. I write separately with regard to the claims of misconduct lodged against Mr. Canterino's counsel to elaborate upon my separate concurrence submitted with the original opinion in this matter.

In my original separate concurrence, I concluded that the remarks of Canterino's counsel did not merit a new trial. I am still of that opinion. My prior concurrence attempted to apply the majority ruling in *DeJesus v. Flick*,[1] by concluding that the ver-

---

[11]*Id.*

[12]103 Nev. 686, 688, 747 P.2d 1380, 1382 (1987).

[13]THE HONORABLE MYRON E. LEAVITT, Justice, voluntarily recused himself from participation in the decision of this matter. The Honorable Michael P. Gibbons, Judge of the Ninth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE MYRON E. LEAVITT, Justice. Nev. Const. art. 6, § 4.

[1]116 Nev. 812, 7 P.3d 459 (2000). .

dict reached by the jury below was not "objectively unreliable." In this I stated:

> However, given the divergence of opinion within this court over this appeal, as well as the four-to-three split of this court in *DeJesus,* what constitutes objective non-reliability can be the subject of reasonable intellectual or philosophical differences. The dissents here and in *DeJesus* demonstrate the confusion that can occur when we, on a case-by-case basis, make these difficult determinations in the context of published opinions. Thus, we should engage in plain error analysis of misconduct to which no objection has been made with great care, and with the understanding that discrete patterns of misconduct do not set the standard for evaluating plain error.[2]

The arguments on rehearing, coupled with the fact that I did not participate in the *DeJesus* decision, have persuaded me to more definitively weigh in on the statement of doctrine governing situations of attorney misconduct when the opponent does not object or move for mistrial. It is important that I do this because the members of this court that did participate in *DeJesus* were evenly split on this issue. Although appreciating the sentiments of the majority in that case, I have come to agree with the dissenters in *DeJesus* in terms of the rule that should apply to unobjected-to misconduct in civil cases. That rule is stated by the *DeJesus* dissenters as follows:

> *"It is only in those rare circumstances where the comments are 'of such sinister influence as to constitute irreparable and fundamental error' that the absence of objection will be overlooked."*[3]

Unlike criminal cases, in which most defendants are represented by counsel not of their own choosing, civil litigants generally exercise free choice in the selection of an attorney. Also, property rather than liberty interests are at stake. Thus, the protection from attorney misconduct arises from a completely different dynamic. The choice to object, to not object or to seek a mistrial is, as a general matter, one of tactics by the attorney chosen to represent the affected party. Given the disparity of opinion

---

[2]*Canterino v. The Mirage Casino-Hotel,* 117 Nev. 19, 27, 16 P.3d 415, 420 (2001) (MAUPIN, C. J., concurring).

[3]*DeJesus,* 116 Nev. at 827, 7 P.3d at 469 (ROSE, C. J., dissenting) (quoting *Budget Rent A Car Systems, Inc. v. Jana,* 600 So. 2d 466, 467 (Fla. Dist. Ct. App. 1992) (quoting *LeRetilley v. Harris,* 354 So. 2d 1213, 1215 (Fla. Dist. Ct. App. 1978))). Four commissioned members of this court have now taken this view in separate decisions: JUSTICE LEAVITT, JUSTICE ROSE, JUSTICE SHEARING and myself.

on the issue within this court, the original majority in *DeJesus* has quite arguably made it difficult for trial judges to know when to intervene to avoid a reversal when misconduct occurs and that misconduct is not met with an objection from the opposing side. The division of the court on this issue may also have made it difficult for civil trial attorneys to determine where the line of propriety is drawn to avoid implication of the plain error doctrine. This is underscored by the original dissent of JUSTICE ROSE in this case, in which he attempts to apply *DeJesus* on a comparative basis to this matter. I firmly believe that we should not engage in such comparisons. These are decisions that must be made on a case-by-case basis. Thus, recognizing that no litmus test for judicial intervention in these situations can be divined, I am constrained to agree with the more relaxed standard articulated in the *DeJesus* dissent. In this, I make no comment on how I would have applied this rule in *DeJesus* since I was recused in that matter.

I stress again that we should operate from the premise or presumption that, in civil cases, failures to object or seek a mistrial in connection with attorney misconduct are the result of tactical or strategic choices by trial counsel. As I observed originally:

> In this case, as an apparent matter of trial tactics, defense counsel chose to let much of the conduct complained of go unchallenged either by way of objection and a request for admonishment of the jury or a request for a mistrial. The record below suggests that defense counsel could have reasonably concluded that the histrionics of Canterino's counsel were having a negative rather than a positive effect on the jury. This, however, turned out not to be the case. The jury verdict in this case was the result of a calculated risk taken by an experienced attorney retained at the election of the client. We should not intervene to disturb this kind of dynamic in civil cases.[4]

Thus, my decision that a full trial on liability and damages is necessary is not at all based upon the allegations of misconduct made against Canterino's trial counsel.[5] Rather, it is based upon the fact that we should have adopted the rule on the jury communication issue adopted by the Arizona Supreme Court.[6]

---

[4]*Canterino,* 117 Nev. at 28, 16 P.3d at 420 (MAUPIN, C. J., concurring).

[5]JUSTICE AGOSTI questions my re-raising of the *DeJesus* issue at this time. While I appreciate her concern, the issue was raised on rehearing. Further, the uncertainty over the split decisions of the court on the issue led me to conclude that the bench and bar of the state should know where all of the justices stand on it as soon as possible.

[6]*See Perkins v. Komarnyckyj,* 834 P.2d 1260 (Ariz. 1992).

AGOSTI, J., concurring:

I concur with the majority. I write separately to respond to the concurrences of CHIEF JUSTICE MAUPIN and JUSTICE ROSE. Rehearing was granted in this case pursuant to NRAP 40(c)(2), which states: ''The court may consider rehearings in the following circumstances: (i) When the court has overlooked or misapprehended a . . . material question of law in the case . . . .'' As the majority notes, we relied in our original opinion on *Perkins v. Komarnyckyj,*[1] an Arizona case, but failed to apply its holding to the question of whether all jurors must participate in all deliberations. We granted rehearing for the limited purpose of examining *Perkins* to determine whether we should adopt its reasoning for Nevada. The concurring justices, however, have now taken the opportunity to discuss matters not on the table for rehearing and have rendered advisory opinions on an issue not currently before the court.

CHIEF JUSTICE MAUPIN ''weighs in'' with an opinion on the legal principle he would have adopted in a case from which he recused himself, *DeJesus v. Flick.*[2] He reminds us all that *DeJesus* was a four-to-three split decision and that the fourth majority vote was a district judge sitting by designation in his place.

I suggest that it may be inappropriate to gratuitously remark about how one would vote on an issue not before the court for resolution. We do not know whether the identical issue is pending in a case awaiting resolution before us or in any court.[3] I think the better course is to decide a case in controversy when it is presented.

ROSE, J., concurring:

I initially applied *DeJesus v. Flick*[1] to the facts of this case, as I felt obligated to do.[2] In doing so, I determined that the attorney misconduct here is similar to that cited in *DeJesus,*[3] and under the *DeJesus* standard, the damages here are clearly excessive when compared to the proven injuries.[4] Therefore, I felt that the entire judgment should be reversed, as we are now voting to do on a different basis on rehearing.

---

[1]834 P.2d 1260 (Ariz. 1992).

[2]116 Nev. 812, 7 P.3d 459 (2000).

[3]Nevada Code of Judicial Conduct, Canon 3B(9).

[1]116 Nev. 812, 7 P.3d 459 (2000).

[2]*Canterino v. The Mirage Casino-Hotel,* 117 Nev. 19, 30, 16 P.3d 415, 422 (2001) (ROSE, J., concurring in part and dissenting in part).

[3]*See DeJesus,* 116 Nev. at 817-19, 7 P.3d at 463-64.

[4]*Canterino,* 117 Nev. at 30-33, 16 P.3d at 422-24 (ROSE, J., concurring in part and dissenting in part).

However, in applying the *DeJesus* test, one aspect of it presented a major problem—the search for an objective standard in determining whether damages were appropriate or excessive. The *DeJesus* majority used the medical expenses to gauge whether the damages for pain and suffering and permanent injury were excessive.[5] But great damages can result from an injury that requires minimal medical expenses—as is often the case with mild to moderate brain injuries. We are attempting to apply some objective standard to injuries that are proven largely by subjective testimony. If we are to continue with the *DeJesus* analysis, I would eliminate the ''objectively reasonable'' standard[6] when reviewing damages, and instead, review the damages awarded to see if substantial evidence supports their award.[7]

The concurrence of CHIEF JUSTICE MAUPIN on rehearing voices his agreement with the rule suggested by the dissenters in the original *DeJesus* decision. Notwithstanding my views stated in this case in attempting to follow the *DeJesus* precedent, my preference would be to abandon the *DeJesus* standard and adopt the rule three justices urged in the *DeJesus* dissent[8] and that is supported in this concurrence.

SHEARING, J., dissenting:

I do not agree that the district court's erroneous instructions on the issue of damages requires a retrial on all issues. The jury verdict was very clear that six out of eight jurors found that the Mirage was liable to Canterino. The jury made a permanent determination and reduced its determination to writing when it filed its verdict form. Assuming that the jury followed the district court's erroneous instruction on who was to determine damages, the error only related to the determination of damages.

I believe that the majority opinion elevates form over substance. When a competent jury determines an issue that has been thoroughly (and expensively) litigated, it is a waste of time, money, and talent to require a new jury to redetermine the issue. One of the principal criticisms of our civil justice system is that litigation has become too expensive for the vast majority of our citizens to be able to afford. The result reached by the majority unnecessarily exacerbates that problem.

---

[5]*DeJesus,* 116 Nev. at 820 & n.5, 7 P.3d at 464-65 & n.5.

[6]*See id.* at 820, 7 P.3d at 464-65.

[7]*See id.* at 828, 7 P.3d at 467 (ROSE, C. J., dissenting).

[8]*See id.* at 823-28, 7 P.3d at 466-70 (ROSE, C. J., dissenting).