EDWARD RINGLE, an Individual, and STAGECOACH CASINO AND HOTEL, a Sole Proprietorship, Appellants, v. ALPHEUS C. BRUTON, II, Respondent.

No. 38931

April 1, 2004                              86 P.3d 1032

*Carmine J. Colucci & Associates* and *Carmine J. Colucci*, Las Vegas, for Appellants.

*Law Office of Daniel Marks* and *Adam Levine* and *Daniel Marks*, Las Vegas, for Respondent.

## OPINION

By the Court, AGOSTI, J.:

This is an appeal from a final judgment in an employment contract case and an order denying a motion for a new trial. Appellant Edward Ringle contends that (1) the district court erroneously denied his motion for summary judgment or partial summary judgment because the employment contract had expired and was unenforceable, (2) the district court abused its discretion by giving erroneous jury instructions concerning the contract's continuation and the parol evidence rule, and (3) the jury's compensatory damages were not supported by substantial evidence. Ringle also contends that it was an abuse of discretion for the district court to deny his motion for a new trial based on a claim that opposing counsel engaged in blatant misconduct during closing argument.

We affirm the judgment because we perceive no error in the district court's decision concerning the jury instructions and also because our review of the record reveals the existence of substantial evidence to support the jury's damages awards. We have not previously decided whether an employee who continues to work for an employer after the expiration of a contract of employment becomes an at-will employee. We do so now. We conclude that when an employee continues to work after his contract of employment expires, it is presumed that all the terms of the employment contract continue to govern the conduct of the employer and the employee until the parties properly amend or terminate the contract or

until the employee ceases working for the employer. The contract duration, however, does not renew.

We also affirm the order denying Ringle's motion for a new trial. Although, at trial, opposing counsel improperly and more than once accused Ringle of lying, Ringle did not timely and properly object to these comments. We also today clarify our recent holding in *DeJesus v. Flick*[2] concerning the necessity of making a timely and appropriate objection to improper argument in order to preserve the issue on appeal. We hold that allegedly improper argument, not properly objected to at trial, will not be considered on appeal absent extraordinary circumstances which we describe in this opinion.

## FACTUAL BACKGROUND

Ringle was the owner of the Stagecoach Casino and Hotel in Beatty, Nevada. In June 1992, Ringle hired Alpheus Bruton to work as the facility's general manager. Ringle and Bruton executed a written employment contract drafted and then revised by Bruton to incorporate Ringle's suggestions. The contract provided that "[t]his agreement is for a period of two years from the date of signing." The contract also incorporated a "General Understanding" that "a permanent mutually beneficial business relationship be established and that [Bruton] will endeavor to assist [Ringle] in the growth of his organization." The contract provided for Bruton's compensation by providing that Bruton would receive a $44,990.00 base annual gross salary and a $1,800.00 monthly bonus if certain goals were met. Other provisions specified that vacation time accrued at the rate of one day per month of employment and that Ringle would reimburse Bruton's reasonable business expenses. Finally, the contract permitted either partner to cancel the agreement on the condition of sixty days' written notice. If Ringle canceled, Bruton was entitled to receive $25,000.00 net, any salary and bonus accrued for the year, and all bonuses owed at the end of the sixty-day notice period. If Bruton canceled, he received less money.

Bruton was employed at the Stagecoach for four years. The parties' contract was never amended in writing or terminated pursuant to a writing. Nor did the parties execute a new written contract. In 1994, Bruton received a company car for both business and personal use. In March 1995 and again in March 1996, Ringle raised Bruton's salary by five percent on his own initiative without negotiating with Bruton. In June 1996, however, Ringle and Bruton argued. As a result, Bruton's employment at the Stagecoach ended.

[2]116 Nev. 812, 7 P.3d 459 (2000).

The parties dispute whether Bruton resigned or whether Ringle terminated him, but neither party provided the other with any advance notice.

In March 1997, Bruton sued Ringle, alleging several contract and tort claims. After answering the complaint and asserting a counterclaim, Ringle moved for summary judgment or alternatively for partial summary judgment, arguing that Bruton had no contract claims because after the contract expired in June 1994, Bruton became an at-will employee. The district court denied the motion. Bruton abandoned his tort claims, Ringle abandoned his counterclaim, and the parties proceeded to a jury trial on Bruton's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

During closing argument, Bruton's counsel asserted on six occasions that Ringle either had lied or had motive to lie during his testimony. The incidents are as follows:

> The evidence that he told you, oh, we had a new deal, I intended a new deal, that was a lie, that was a bald faced lie that he told you here in Court. His deposition testimony which he was able to give without working with his attorney, without prompting, without listening and figuring out, how can I rebut this, how can I get around this, he didn't even think about it.
>
> . . . .
> Let me reiterate, it was Mr. Ringle [who] sat up here and lied to you. He lied here at trial.
>
> . . . .
> One of the other big lies that was told in this case was what happened to Alpheus Bruton's employment.
>
> . . . .
> So let's ask, who has the incentive to lie? Mr. Ringle has the incentive to lie . . . .
>
> . . . .
> Mr. Ringle lied about the termination. If you simply listen to his testimony, while much or all of it was untrue . . . .
>
> . . . .
> Again I'll reiterate, it is Mr. Ringle that has the incentive to lie.

Ringle's counsel objected to the first excerpt above and moved for a mistrial on the basis that ''Counsel is asserting to the jury that I would take place in fabricating a lie, taking part, . . . in preparing a lie to present to the jury. He said with prompting and working with the attorney. That is absolutely improper.'' The district court took the matter under advisement, and Bruton's counsel continued with his argument, including making the additional improper re-

marks excerpted above. These remarks drew no objection from Ringle.

After the jury retired, Ringle again moved for a mistrial, arguing that *DeJesus*[3] required a mistrial, claiming that Bruton's closing argument was improperly inflammatory. Specifically, Ringle cited the comments to the jury by Bruton's counsel that Ringle's counsel "was engaged in fabricating a lie and getting [his] witness to testify to it" and that Ringle was a liar.

Bruton's counsel denied accusing opposing counsel of improper behavior and argued it was proper to call Ringle a liar based upon the evidence which included changes in Ringle's testimony. Bruton's counsel asserted, for example:

> I did not state a personal opinion. I didn't say I believe Mr. Ringle lied. Mr. Ringle did lie. He changed his testimony. Quite frankly, accusing a party of lying, it's never been my understanding that is error, much less reversible error, that is fairly standard, particularly, in employment cases, somebody is not telling the truth.

Ringle asserted that *DeJesus*

> indicates that attorneys have a certain responsibility and one of them is not to call somebody a bald faced liar. If that isn't appealing to the passions and prejudice and violating the decorum of this entire procedure, I don't know what the devil is.

While the district court agreed that it was absolutely wrong for Bruton's counsel to call Ringle a liar, it denied Ringle's motion, finding that the improper arguments were not sufficiently pervasive or prejudicial to require a mistrial.

The jury returned a $131,814.83 verdict for Bruton. The district court denied Ringle's motions for judgment notwithstanding the verdict, for a new trial, and for remittitur. Ringle appealed.

## DISCUSSION

We first address Ringle's argument that the district court erred in denying his motion for summary judgment.[4] Ringle asserts that no material issues of fact exist regarding Bruton's employment status because when the contract term expired, Bruton became an at-will employee whose employment status could be terminated at any time without prior notice to him. Ringle argues that the contract provisions were unenforceable given Bruton's at-will status.

---

[3]116 Nev. 812, 7 P.3d 459.

[4]*See Consolidated Generator v. Cummins Engine*, 114 Nev. 1304, 1312, 971 P.2d 1251, 1256 (1998) (noting that interlocutory orders may be challenged in the context of an appeal from the final judgment).

Summary judgment is proper only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[5] The district court properly found that material issues of fact remained. Therefore, Ringle was not entitled to summary judgment or partial summary judgment.

In Nevada, at-will employment is presumed in the absence of a written employment contract.[6] Ringle and Bruton had executed an employment contract. It is a question of first impression as to whether or which terms and conditions of an employment contract remain to govern the conduct of the parties when an employer/employee relationship continues after the term of the contract expires. It is generally accepted that

> [when] an employment contract for a definite term expires and the employee, without explicitly entering into a new agreement, continues to render the same services rendered during the term of the contract, it may be presumed that the employee is serving under a new contract having the same terms and conditions as the original one. The presumption may be rebutted by evidence that the contract terms were changed or that the parties understood that the terms of the old contract were not to apply to the continued service.[7]

Thus, when an employee and employer continue an employment relationship after the term of duration contained in a written contract, the original contract is presumed to renew automatically under the same terms and conditions until either party terminates the contract. We conclude, however, that the contract's duration does not presumptively renew.[8]

When Bruton began working for the Stagecoach, his employment contract with Ringle contained a two-year term. Bruton con-

---

[5]NRCP 56(c); *see Dermody v. City of Reno*, 113 Nev. 207, 210, 931 P.2d 1354, 1357 (1997).

[6]*See American Bank Stationery v. Farmer*, 106 Nev. 698, 701, 799 P.2d 1100, 1101-02 (1990).

[7]27 Am. Jur. 2d *Employment Relationship* § 31 (1996) (footnote omitted); *see* L. I. Reiser, Annotation, *Employee's Rights with Respect to Compensation or Bonus Where He Continues in Employer's Service After Expiration of Contract for Definite Term*, 53 A.L.R.2d 384, 385 (1957); 30 C.J.S. *Employer-Employee Relationship* § 29 (1992).

[8]*See, e.g., Russell v. White Oil Corporation*, 110 So. 70, 71 (La. 1926) (explaining that "there is no provision of law by which a contract for hire of services, if extended beyond the time first agreed upon, is renewed for another like term").

tinued his employment for two years beyond the date the contract's duration term had ended without entering into a new written contract and without amending the original written contract. Since we conclude under these circumstances that there exists a presumption that the terms of the contract continued to govern the parties, except for the contract's duration term, Bruton did not necessarily become an at-will employee after the contract expired. Absent persuasive evidence to the contrary, the contract terms continued in full force and effect until Bruton's employment at the Stagecoach ended. The district court did not err by denying Ringle's motion for summary judgment.

At trial, Ringle presented evidence and argued to the jury that the contract expired two years after its execution, and that he gave Bruton raises and a company car to use in lieu of another contract. The jury was not persuaded by Ringle's evidence, however, and found, as it was permitted to do, that the original contract's terms and conditions continued to govern Bruton's employment at the Stagecoach. The jury verdict demonstrates that Ringle had failed to rebut the presumption that he and Bruton were bound by a new contract which contained the same terms and conditions as had the original contract.

Ringle next contends that two jury instructions given to the jury were erroneous. He argues that Jury Instruction 31 was improper because it instructed the jury that it is presumed that Bruton's post-contract employment continued under the original contract's terms.[9] Ringle also argues that Jury Instruction 27 violated the parol evidence rule because it stated that the employment contract could have been partly oral.[10]

"The district court has broad discretion to settle jury instructions,"[11] and a district court's decision to give a particular instruction will not be overturned absent an abuse of discretion or judicial error.[12]

Jury Instruction 31 was not improper. It embodies the presumption we adopt today. Jury Instruction 27 did not violate the parol

---

[9]Jury Instruction 31 states, "Where an employee is employed for a specified term, and after the expiration of that term continues in the employment without any new contract, there is a presumption that the employment is continued on the terms of the original contract."

[10]Jury Instruction 27 states, "A contract may be oral, written, or partly oral and partly written. An oral, or partly oral and partly written contract is as valid and enforceable as a written contract."

[11]*Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).

[12]*Id.*

evidence rule. The parol evidence rule does not permit the admission of evidence that would change the contract terms when the terms of a written agreement are clear, definite, and unambiguous. However, parol evidence is admissible to prove a separate oral agreement regarding any matter not included in the contract or to clarify ambiguous terms so long as the evidence does not contradict the terms of the written agreement.[13] Both Bruton and Ringle testified that the contract did not incorporate all the terms of their employment agreement. The district court did not abuse its discretion by giving these instructions to the jury.

Ringle also contends that the jury's bonus pay, vacation pay, and severance pay awards were not supported by substantial evidence. The jury awarded Bruton $86,400.00 in bonus pay, $5,916.50 in vacation pay, and $39,498.33 in severance pay, for a total of $131,814.83. These are the sums Bruton requested in argument. The verdict will not be overturned if "supported by substantial evidence, unless, from all the evidence presented, the verdict was clearly wrong."[14] Substantial evidence is evidence that " 'a reasonable mind might accept as adequate to support a conclusion.' "[15]

First, Ringle argues that substantial evidence does not support the bonus award because Bruton never satisfied the bonus criteria.[16] The contract provided as follows:

> [Bruton's] bonus shall be considered to be a minimum payment of $1,800 a month for all quarters where gross operating profits exceed $30,000 on a comparison basis to the previous year. Bonus accrued after first quarter will be paid out monthly in the following quarter. On quarters where this has not been achieved, no bonus need be paid subject to the pro-

[13]*Crow-Spieker #23 v. Robinson*, 97 Nev. 302, 305, 629 P.2d 1198, 1199 (1981) (holding that parol evidence, so long as it is not inconsistent with the terms of the written contract, may be admitted to prove the existence of a separate oral agreement as to matters on which the written contract is silent); *State ex rel. List v. Courtesy Motors*, 95 Nev. 103, 107, 590 P.2d 163, 165 (1979) (stating that parol evidence is admissible to determine intent when the written contract is ambiguous). Ringle incorrectly cites NRS 104.2202 for the parol evidence rule. This UCC Article 2 statute exclusively governs the sale of goods. *See* NRS 104.2102.

[14]*Bally's Employees' Credit Union v. Wallen*, 105 Nev. 553, 555-56, 779 P.2d 956, 957 (1989).

[15]*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Edison Co. v. Labor Board*, 305 U.S. 197, 229 (1938)), *quoted in State, Emp. Security v. Hilton Hotels*, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).

[16]Ringle also challenges each award on the basis that the contract expired, so its terms did not apply, but that issue has been resolved against him. He does not challenge the specific dollar amounts of the awards.

vision that at the end of the Calendar Year if gross operating profits exceed $120,000 a bonus will be paid for those quarters not reached.

An accountant testified that gross operating profits is not an accounting term. The accountant equated the term to gross operating income. From the testimony of Ringle and Bruton, it is evident that the parties interpreted the term as gross operating income. The parties disagreed, however, regarding the bonus provision's purpose and conditions.

Ringle testified that the parties intended that Bruton would earn a bonus only if he increased the previous year's quarterly gross operating income by $30,000.00 or the previous year's annual gross operating income by $120,000.00. Because it was undisputed that the Stagecoach's gross operating income did not increase by these amounts, Ringle argues that Bruton was not entitled to any bonuses. Ringle further asserts that Bruton's failure to demand bonuses when they otherwise fell due demonstrates that he knew that he did not earn them. According to Ringle, the bonuses were meant to motivate Bruton and reward him for increasing operating income at the Stagecoach; since Bruton failed to show that he satisfied the bonus criteria, the jury erred in awarding him bonus compensation.

Bruton testified that the bonus provision was agreed to as a means for paying the balance of his $65,000.00 salary. Bruton testified, without contradiction, that he agreed to leave his Las Vegas employment only if Ringle would pay him $65,000.00 per year. The parties' contract provided Bruton would be paid a base annual gross salary of $44,990.00. Adding a minimum of $1,800.00 monthly in bonuses would give Bruton an annual salary of $66,590.00. According to Bruton, his compensation was structured this way because Ringle did not want to live in Beatty, but wanted to ensure that the Stagecoach at least broke even while Bruton was managing it. Thus, as long as the Stagecoach's annual gross operating income was at least $120,000.00, Bruton was entitled to his full salary, including bonuses. Bruton explained that he did not demand bonuses as they became due because Ringle was experiencing financial difficulties with other endeavors and profits from the Stagecoach were being diverted elsewhere. Bruton testified that he relied upon Ringle who had acknowledged the debt to Bruton and had, according to Bruton, said that he would "make things right." It was undisputed that the Stagecoach's gross operating income was more than $120,000.00 every year that Bruton worked there.

The bonus provisions were ambiguous. The district court properly admitted Ringle's and Bruton's testimony concerning these

provisions. The district court also properly submitted the bonus issue to the jury to determine the parties' intent. As previously stated, when a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written; the court may not admit any other evidence of the parties' intent because the contract expresses their intent.[17] When contract language is ambiguous and incomplete, however, extrinsic evidence may be admitted to determine the parties' intent, explain ambiguities, and supply omissions.[18] In determining the parties' intent, the trier of fact must construe the contract as a whole, including consideration of the contract's subject matter and objective, the circumstances of its drafting and execution, and the parties' subsequent conduct.[19] Ambiguous terms should be construed against the party who drafted them,[20] and the jury was so instructed. The jury obviously believed Bruton's testimony as to the meaning of the disputed provision. His testimony constitutes substantial evidence to support the bonus award. We will, therefore, not overturn the verdict.

Second, Ringle argues that substantial evidence does not support the jury's vacation pay award. The original contract provided that "[v]acations will accrue at the rate of 1 day per month of [e]mployment." The parties disagreed whether Bruton took any vacations and whether Bruton lost any vacation time not used. The district court properly submitted this issue to the jury as well, to resolve the factual question of whether Bruton took any vacations and to interpret the unclear contract provision. The jury found that Bruton did not take any vacations and was entitled to payment for unused vacation days. Consequently, the jury awarded Bruton compensation for twelve days of paid vacation for each year of his four years of employment at the Stagecoach. Substantial evidence supports the jury's award.

Third, Ringle argues that substantial evidence does not support the severance pay award. Bruton argues that whether he quit the Stagecoach or Ringle fired him was a question of fact for the jury to decide. We agree. Both parties testified concerning the circum-

---

[17]*Sandy Valley Assocs. v. Sky Ranch Estates*, 117 Nev. 948, 953-54, 35 P.3d 964, 967-68 (2001).

[18]*Id.*

[19]*See id.* at 954, 35 P.3d at 968; *Siggelkow v. Phoenix Ins. Co.*, 109 Nev. 42, 44, 846 P.2d 303, 304 (1993) (holding that a court must construe an insurance contract as a whole in order to give a reasonable and harmonious meaning to the entire contract).

[20]*Dickenson v. State, Dep't of Wildlife*, 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994).

stances surrounding Bruton's departure from the Stagecoach. Bruton testified that Ringle fired him without notice, rebuffed his offer to remain for another sixty days, and attempted to issue him a check for one month's wages as severance pay. The jury awarded Bruton $39,498.33 in severance pay, which represents sixty days of pay Bruton lost when his employment suddenly ended, plus $25,000.00 after taxes, in accordance with the contract's severance provision. Bruton's testimony constitutes substantial evidence supporting the jury's severance pay award.

Ringle next contends that the district court abused its discretion in denying his motion for a new trial on the grounds that Bruton repeatedly argued that Ringle lied to the jury and intimated that Ringle's counsel induced perjured testimony.[21] Ringle claims that he was prejudiced by Bruton's comments since the jury's assessments of the parties' credibility was crucial to the outcome of the case.

A district court may grant a new trial based on a prevailing party's misconduct,[22] and its ruling will not be disturbed on appeal absent an abuse of discretion.[23] "To warrant reversal on grounds of attorney misconduct, the 'flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.' "[24] Opposing counsel's failure to object to attorney misconduct at trial generally precludes appellate review.[25]

Timely and appropriate objections to instances of attorney misconduct serve at least two purposes. Objections demonstrate that

[21]Ringle's notice of appeal states this appeal is taken from the district court's order denying his motion for a judgment notwithstanding the verdict or for a new trial or for a remittitur. An order denying a motion for a new trial is expressly appealable under NRAP 3A(b)(2). An order denying a motion for a judgment notwithstanding the verdict or a motion for remittitur is not. *See Uniroyal Goodrich Tire Co. v. Mercer*, 111 Nev. 318, 320 n.1, 890 P.2d 785, 787 n.1 (1995); NRAP 3A(b)(2). Thus, we will limit our review to the denial of Ringle's motion for a new trial.

[22]NRCP 59(a)(2).

[23]*Southern Pac. Transp. Co. v. Fitzgerald*, 94 Nev. 241, 244, 577 P.2d 1234, 1236 (1978).

[24]*Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting *Standard Oil Company of California v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965)), *quoted in Barrett v. Baird*, 111 Nev. 1496, 1515, 908 P.2d 689, 702 (1995).

[25]*Southern Pac. Transp. Co.*, 94 Nev. at 244, 577 P.2d at 1235-36 (explaining that to preserve the issue for appeal, "specific objections must be made to allegedly improper closing argument").

the objecting party takes issue with the conduct. As we recognized in *Beccard v. Nevada National Bank*,[26] "[t]he failure to object to allegedly prejudicial remarks at the time an argument is made, and for a considerable time afterwards, strongly indicates that the party moving for a new trial did not consider the arguments objectionable at the time they were delivered, but made that claim as an afterthought."

Timely objections also conserve judicial resources. Objections provide the trial court an opportunity to correct any potential prejudice and to avoid a retrial. This opportunity for correction may also obviate the need for an appeal. In *Horn v. Atchison, Topeka and Santa Fe Railway Co.*,[27] the California Supreme Court explained this important function of objections:

> The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeated improprieties, thus avoiding the necessity of a retrial. "It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have."[28]

We reiterate the requirement in civil cases that counsel timely and specifically object to instances of improper argument in order to preserve an issue for appeal.[29]

In our recent decision in *DeJesus v. Flick*,[30] our conclusion that the misconduct so permeated the proceedings that it resulted in an unreliable verdict turned on the jury's $1,470,000.00 award.[31] The award for future special damages was not supported by any objective evidence in the record, and it greatly exceeded the plaintiff's request and the evidence adduced at trial.[32] The evidence in the record established that the plaintiff's future medical expenses would be, at best, $21,000.00,[33] yet the jury awarded the plaintiff $100,000.00 for future medical expenses. The record did support the award of general damages for pain and suffering.

---

[26]99 Nev. 63, 65-66, 657 P.2d 1154, 1156 (1983).

[27]394 P.2d 561 (Cal. 1964).

[28]*Id*. at 565-66 (quoting *Tingley v. Times Mirror Co.*, 89 P. 1097, 1106 (Cal. 1907)).

[29]*See Beccard*, 99 Nev. at 66, 657 P.2d at 1156.

[30]116 Nev. 812, 817-19, 7 P.3d 459, 463-64 (2000).

[31]*Id*. at 820, 7 P.3d at 464.

[32]*Id*. at 820, 7 P.3d at 464-65.

[33]*Id*. at 820 n.5, 7 P.3d at 465 n.5.

In order to clarify our decision in *DeJesus*, we emphasize today that in civil cases we will consider arguments of egregious but unobjected-to misconduct at trial by counsel "only in those rare circumstances where the comments are 'of such sinister influence as to constitute irreparable and fundamental error.' "[34] Irreparable and fundamental error is error that, if not corrected, would result in a substantial miscarriage of justice or denial of fundamental rights and is only present when it is plain and clear that no other reasonable explanation for the verdict exists. In *DeJesus*, the verdict for future special damages was not supported by any version of the evidence. The jury's verdict may be explained in light of the sheer volume of the inflammatory arguments made by plaintiff's counsel during the closing argument. Reversal was deemed the appropriate remedy to prevent a miscarriage of justice and fundamental error.

Here, Bruton's counsel mentioned several times during closing argument that Ringle lied on the witness stand. Ringle's counsel, however, failed to object to these statements on the now asserted claim that calling a witness a liar is improper.[35] Instead, he once objected and moved for a mistrial because he thought Bruton's counsel implied that he, defense counsel, had helped Ringle fabricate Ringle's testimony. This objection was insufficient to preserve for appeal the issue of the alleged misconduct of Bruton's counsel. Since Ringle failed to object, any error resulting from the misconduct is deemed waived. He is precluded from now arguing that Bruton's counsel engaged in repeated instances of misconduct which are so egregious as to warrant reversal unless he can show that the verdict is unreliable. Further, Ringle has also failed to overcome the bar on appeal to asserting error based upon conduct unobjected to below. Ringle has not demonstrated, in our assessment, misconduct so permeating the record as to warrant our review to get to the point where we might inquire whether the jury's verdict is unreliable. Perceiving no plain error, we conclude that the judgment must be affirmed.

SHEARING, C. J., BECKER and GIBBONS, JJ., concur.

ROSE, J., with whom MAUPIN, J., agrees, concurring:

I concur in the result, but object to what I perceive is the resurrection of the standard stated in *DeJesus v. Flick*[1] for assessing

---

[34]*Budget Rent A Car Systems, Inc. v. Jana*, 600 So. 2d 466, 467 (Fla. Dist. Ct. App. 1992) (quoting *LeRetilley v. Harris*, 354 So. 2d 1213, 1215 (Fla. Dist. Ct. App. 1978)).

[35]*See Rowland v. State*, 118 Nev. 31, 39 P.3d 114 (2002).

[1]116 Nev. 812, 7 P.3d 459 (2000).

when unobjected-to, improper attorney argument will require a reversal of a case. Four justices have indicated their disapproval of the *DeJesus* standard and expressed their agreement with the less stringent standard as set forth in the *DeJesus* dissent.[2] It appeared that the *DeJesus* standard was rejected, only to see that the majority opinion now cites *DeJesus* with approval and states that the *DeJesus* verdict was not supported by any version of the evidence.

As was explained in the *DeJesus* opinion, medical experts testified that Flick sustained permanent brain and nerve damage, and her continual headaches, dizzy episodes, blackouts, memory loss, neck pain, and curling of her hands in a claw-like manner were permanent.[3] The jury believed these witnesses, and Flick's injuries certainly supported the future pain and suffering award of $1,000,000.00 and the loss of income award of $300,000.00. The majority opinion acknowledges that the award for pain and suffering was supported by the record.

The majority opinion does claim that the evidence in *DeJesus* did not support the $100,000.00 awarded as future medical expenses, but only $21,000.00, as indicated by Flick's experts.[4] This is correct, but the appropriate action in *DeJesus* would have been to strike the $79,000.00 from the special damages award and let the rest of the verdict stand—not strike the entire verdict that was overwhelmingly supported by competent evidence.

Finally, the majority claims that the *DeJesus* verdict could only be explained by the inflammatory language used by Flick's attorney. This simply is not true. The evidence on damages was more than sufficient to support the verdict, with the exception of the excess damages awarded for future medical expenses. As explained in the *DeJesus* dissent, Flick was injured when DeJesus, in a rage, cut off the vehicle Flick was riding in and sent it crashing into the highway median.[5] DeJesus then jumped onto the front hood of the car and pounded on the windshield, demanding that the two women come out.[6] In addition to the damages evidence, DeJesus's road rage certainly helps explain why Flick was given full recovery for her injuries. As the *DeJesus* dissent began: "This is a case about the road rage conduct of Kenneth DeJesus that caused a substantial permanent brain injury to Sherry Flick."[7] With liability ad-

---

[2]*See Canterino v. The Mirage Casino-Hotel*, 118 Nev. 191, 195, 42 P.3d 808, 810 (2002) (MAUPIN, J., concurring and agreeing with the dissent in *DeJesus*); *DeJesus*, 116 Nev. at 823, 7 P.3d at 466 (ROSE, C. J., dissenting with SHEARING and LEAVITT, JJ.).

[3]116 Nev. at 814, 7 P.3d at 461; *id*. at 824, 7 P.3d at 467 (ROSE, C. J., dissenting).

[4]*Id*. at 820, 7 P.3d at 464-65.

[5]*Id*. at 823, 7 P.3d at 466 (ROSE, C. J., dissenting).

[6]*Id*. (ROSE, C. J., dissenting).

[7]*Id*. (ROSE, C. J., dissenting).

mitted, it was probable that a sizeable verdict would have been returned regardless of the arguments of Flick's attorney.

By now stating that the damages awarded in *DeJesus* were not supported by the evidence and that the sole reason for the award was the improper remarks of counsel, the majority is repeating the same errors made in *DeJesus*, giving new viability to a decision that was thought to be rejected by a majority of the justices on this court.

I concur in all other aspects of the majority opinion.