Gibbons, J.,
concurring in part and dissenting in part:
I concur that Butler’s guilt phase conviction should be affirmed. I respectfully disagree with the majority’s conclusion that we should reverse the jury’s decision to sentence Butler to death.
We have previously held that jury instruction errors are harmless if the State proves that the error did not contribute to the verdict. We have also held that opposing counsel’s failure to object to alleged misconduct at trial precludes appellate review. These principles, which are based on a reasoned balance of the public’s interests in substantial justice and judicial economy and the defendant’s interest in a fundamentally fair trial, must guide our decision today.

The district court did not abuse its discretion by denying Butler’s motion to have two defense attorneys argue at sentencing

The majority concludes that reversal is proper because the district court erred in denying Butler’s motion to allow both of his attorneys to argue at sentencing. I disagree.
NRS 175.151 states:
If the indictment or information be for an offense punishable with death, two counsel on each side may argue the case to the jury, but in such case, as well as in all others, the counsel for the State must open and conclude the argument. If it be for any other offense, the court may, in its discretion, restrict the argument to one counsel on each side.
*902 (Emphasis added.) The district court interpreted NRS 175.151 as granting discretion to the district court to allow defense counsel to divide the sentencing argument. The majority concludes that the statute grants discretion to the capital defendant, or more realistically to defense attorneys, to determine how they will organize the allotted argument time at sentencing. Though NRS 175.151 was enacted in 1967, this is our first opportunity to interpret its language.
“ ‘Statutory interpretation is a question of law reviewed de novo.’”[1] In interpreting a statute, we will not look beyond the statutory language unless the language is ambiguous.[2] NRS 175.151 is not ambiguous; the statute clearly makes discretionary the division of a capital defendant’s sentencing argument. The only question is upon whom the discretion is bestowed. The majority concludes that the Legislature intended to grant discretion to the capital defendant. I disagree.
The majority’s conclusion is based on the fact that NRS 175.151’s second sentence specifically refers to the district court judge, whereas the first sentence does not. Thus, the majority reasons, the Legislature must have intended that the discretion granted in the first sentence extend to the capital defendant. This interpretation would be monumental indeed, for it would mark the only time that the Legislature extended authority to a litigant to control trial procedure. All other discretion regarding evidence, criminal procedure or civil procedure resides with the district court judge. The notion that “death is different”[3] does not justify such a drastic deviation from the Legislature’s logical determination that the district court judge alone is entitled to exercise discretion over procedures in the district court.
The district court’s interpretation of NRS 175.151 is consistent with the maxim expressio unius est exclusio alter bus.[4] This court has, for more than a century, recognized that the Legislature’s “mention of one thing or person is in law an exclusion of all other things or persons.”[5] The Legislature expressly states that the district court would have the discretion to restrict counsel’s argument at sentencing in a noncapital prosecution. Under expressio unius est exclusio alterius, the district court also has the discretion to allow both defense counsel to argue at a capital sentencing. As noted above, this interpretation is consistent with the remainder of the Nevada Revised Statutes governing trial procedure.
*903 The district court’s interpretation is also consistent with the legislative history behind NRS 175.151. In passing Assembly Bill 81, the Legislature explicitly stated that it “intended to provide for the just determination of every criminal proceeding. [The bill’s] provisions shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.”[6] This statement clarifies the policy behind granting discretion to the district court judge alone. The Legislature could only have intended that the discretion fall to the district court judge.
Having determined that NRS 175.151 extends discretion to the district court, the only remaining question is whether the district court abused that discretion by denying Butler’s motion. “An abuse of discretion occurs if the district court’s decision is arbitrary or capricious or if it exceeds the bounds of law or reason.”[7] The district court did not abuse its discretion; Butler’s motion was denied on the very grounds that the Legislature intended to further. The district court determined that allowing two attorneys with distinct styles to argue essentially the same thing to a single jury would hinder the public’s interest in simple procedure and eliminating unjustifiable delay. Furthermore, Butler has failed to demonstrate any prejudice based upon the fact that only one of his attorneys presented his closing argument.

Any error in the jury instructions was harmless

The majority concludes that reversal is proper because Instruction 6 improperly or incompletely stated the standard for the jury’s consideration of “other matter” evidence at sentencing. I disagree. The jury instruction error, if any, was harmless. Accordingly, I would affirm the sentence.
We have long held that “[a]ll instructions to a jury should be read in the light of each other and considered in their entirety.”[8] No reversible error exists, even if instructions are erroneous or incomplete, so long as, when read together, the instructions “are consistent and state correct principles of law, and are not calculated to mislead the jury.’ ’[9]
In Hollaway v. State,[10] we held that if the State seeks the death penalty, the jury must be instructed that:
In determining whether mitigating circumstances exist, jurors have an obligation to make an independent and objective *904 analysis of all the relevant evidence. Arguments of counsel or a party do not relieve jurors of this responsibility. Jurors must consider the totality of the circumstances of the crime and the defendant, as established by the evidence presented in the guilt and penalty phases of the trial. Neither the prosecution’s nor the defendant’s insistence on the existence or nonexistence of mitigating circumstances is binding upon the jurors.[11]
Butler’s jury received this exact instruction in Instruction 17. In Holloway, we also noted that the jury, at sentencing, must be instructed on the types of evidence that may be admitted and the use for which each type of evidence could be used at sentencing.[12] Butler’s jury was so instructed.
Regarding “other matter” evidence, we first noted that the jury must be instructed on the relevance of “other matter” evidence:
To be relevant, like mitigating evidence, it must relate ‘ ‘to the offense, defendant or victim.” Furthermore, under Nevada’s statutory sentencing scheme, the State can offer this evidence for only one purpose: for jurors to consider in deciding on an appropriate sentence after they have determined whether the defendant is or is not eligible for death.[13]
Second, we noted that the jury must be instructed that such evidence is “not admissible for use by the jury in determining the existence of aggravating circumstances or in weighing them against mitigating circumstances.”[14] Finally, we noted that the district court must instruct the jury as to the proper uses of evidence at sentencing. “Three purposes are proper: to prove an enumerated aggravator, to rebut specific mitigating evidence, or to aid the jury in determining the appropriate sentence after any enumerated aggravating circumstances have been weighed against mitigating circumstances.”[15]
Instruction 6 was not erroneous because it correctly states Nevada law. In fact, Instruction 6 recites our Holloway decision verbatim, though admittedly out of order. Instruction 6 reads:
As to evidence concerning any other matter which the court deems relevant to sentence. It must be relevant, to be relevant, like mitigating evidence, it must relate to the offense, defendant or victim. Furthermore, under Nevada Statutory sentencing scheme, the State can offer this evidence for only one pur *905 pose: for jurors to consider in deciding on an appropriate sentence after they have determined whether the defendant is or is not eligible for death.
“Other matter” evidence is not admissible for use by the jury in determining the existence of aggravating circumstances or in weighing them against mitigating circumstances.
Three purposes are proper: to prove an enumerated aggra-vator, to rebut specific mitigating evidence, or to aid the jury in determining the appropriate sentence after any enumerated aggravating circumstances have been weighed against any mitigating circumstances. Once the jurors determine ^whether or not the defendant is death-eligible, then they must consider all the relevant evidence to determine the appropriate sentence for the defendant.
The majority concludes that Butler’s sentence must be reversed because Instruction 6 is “incomplete and misleading.” This conclusion is based on the fact that Instruction 6 first admonished the jury not to consider other matter evidence in the aggravation/mitigation balance and then contradicted that admonition by instructing the jury as to the proper uses of other matter evidence. I disagree.
In Hollaway, we set forth the purposes for which other matter evidence may and may not be used. Butler’s jury was instructed, according to Hollaway, on what use to give other matter evidence. If Instruction 6 is not an exact replica of our Hollaway decision, it is at the very least a competent reproduction. I fail to see how an instruction can be “error” when its language so closely follows that of the case which sets the standard. That the majority would prefer that the jury be instructed in a different order is irrelevant. As the district court instructed, “[Y]ou are to consider all the instructions as a whole and regard each in the light of all the others.’ ’ Instruction 6 was not erroneous because, read as a whole, it correctly instructed the jury on the proper uses of other matter evidence.
Furthermore, even if Instruction 6 was erroneous, the error was harmless. A jury instruction error is harmless when it is “ ‘clear beyond a reasonable doubt’ ” that the error would not contribute to a rational jury’s decision.[16] This court has noted that the harmless error standard creates a balancing test whereby overwhelming evidence of guilt may render even constitutional errors insignificant.[17]
In this case, the State presented overwhelming evidence to support the aggravator for the death penalty. During the sentencing *906 phase, the evidence showed that Butler had been arrested or cited 32 times for various criminal offenses. In addition to his lengthy criminal history, the State presented evidence of Butler’s misconduct as a prisoner which required his segregation from other inmates. Officer Damarin testified that at the time of his arrest, Butler had two outstanding warrants for possession of a stolen vehicle and that he was in possession of both a stolen vehicle and methamphetamine when he was taken into custody. Inside the stolen vehicle, police officers found a letter, addressed to Butler from a prison inmate, encouraging Butler to “reach out and touch” one of the victims. Furthermore, in orchestrating the underlying murders, Butler convinced female associates to lure the two victims, both members of a rival gang, into the desert on the ruse of “partying” with them. Butler and another gang member lay in wait in the desert for their arrival and then ambushed the victims, shooting both victims numerous times at close range. Accordingly, I would hold that the error, if any, was harmless and affirm Butler’s sentence.

Butler failed to object to the prosecutor’s alleged misconduct

The majority concludes that reversal is necessary because the prosecutor committed misconduct by suggesting that the jury make reasonable inferences from witness testimony and by referring to the defense expert as “high falootin’.” The majority reaches this conclusion even though Butler made no objection to either statement during closing argument. I disagree.
In Ringle v. Bruton, we held that “[ojpposing counsel’s failure to object to attorney misconduct at trial generally precludes review.”[18] By failing to object at the appropriate time, counsel waives appellate review of any error that may result from the alleged misconduct.[19] Thus, Butler waived appellate review of the prosecutor’s statements when he failed to object at sentencing. Butler is not entitled to “sandbag” the State by saving his objection for appeal in order to secure reversal and an undeserved second bite from the district court’s apple.
In Ringle, we held that requiring timely and appropriate objections ensures the accuracy of our decisions in two ways. First, by reviewing only objected-to misconduct, we restrict ourselves, properly, to deciding actual controversies.[20] Second, by requiring timely *907 and appropriate objections, we conserve judicial resources by encouraging trial counsel to “take[ ] issue” with inappropriate conduct at a time when the conduct can be corrected.[21]
Timely objections enable the district court to instruct the jury to disregard improper statements, thus remedying any potential for prejudice.[22] Judicial economy requires that we encourage good trial practice, and we do not encourage good trial practice by granting new penalty phases for errors that could have been corrected with a simple objection by an alert attorney. Neither do we further judicial economy by second-guessing the district court and finding “prejudice” in a statement so banal as to warrant no objection below.
Though Ringle was a civil case involving an employment contract, I suggest that the policies supporting our decision are equally applicable in a criminal case.[23] Judicial economy is no less important in a criminal case, even if the defendant’s crime makes him eligible for the death penalty. Indeed, the gravity of the potential result makes it even more important that counsel diligently object to improper argument and avoid even the potential for prejudice. This result would not punish the criminal defendant for the errors of his attorney. Our system already provides for reversal of criminal sentences that result from attorney error.[24]
The majority’s conclusion in this case serves to discourage diligent trial practice, further inundate already overworked district courts, and reward Butler for his failure to make the simple objection that would have immediately resolved the alleged error. Further, a new penalty phase will require the families of Butler’s victims to relive the gruesome and premeditated deaths of their loved ones.
Reversal on grounds of attorney misconduct is improper unless the misconduct so completely permeates the proceeding that the jury’s verdict was based on passion and prejudice as opposed to law and fact.[25] Butler has made no showing that the prosecution’s statements so aroused the jury’s passion. In fact, the statements are nothing more than rhetorical hyperbole.

There is no cumulative error

The majority concludes that reversal is proper because Butler’s sentencing was the result of cumulative error below. I disagree. While “[t]he cumulative effect of errors may violate a defendant’s *908 constitutional right to a fair trial even though errors are harmless individually,’ ’[26] the district court committed only one error and it was harmless. Accordingly, I would affirm Butler’s sentence.

Firestone v. State, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004) (quoting Construction Indus. v. Chalue, 119 Nev. 348, 351, 74 P.3d 595, 597 (2003)).

State v. Kopp, 118 Nev. 199, 202, 43 P.3d 340, 342 (2002).

See, e.g., Rummel v. Estelle, 445 U.S. 263, 272 (1980); Rhyne v. State, 118 Nev. 1, 15, 38 P.3d 163, 172 (2002) (Becker, J., concurring).

“Expression of one thing is the exclusion of another.” Black’s Law Dictionary 692 (4th ed. 1968).

V. & T. R.R. Co. v. Elliott, 5 Nev. 358, 364 (1870).

 1967 Nev. Stat., ch. 523, § 4, at 1398.

Jackson v. State, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).

Cutler v. P.S.P.M. Co., 34 Nev. 45, 54, 116 P. 418, 422 (1911).

Id.

 116 Nev. 732, 6 P.3d 987 (2000).

Id. at 744, 6 P.3d at 995-96.

Id. at 744-47, 6 P.3d at 996-97.

Id. at 746, 6 P.3d at 997 (citation omitted).

Id.

Id.

Wegner v. State, 116 Nev. 1149, 1155, 14 P.3d 25, 30 (2000) (quoting Neder v. United States, 527 U.S. 1, 18 (1999)).

State v. Carroll, 109 Nev. 975, 977, 860 P.2d 179, 180 (1993).

 120 Nev. 82, 94, 86 P.3d 1032, 1040 (2004).

Id.

“The failure to object to allegedly prejudicial remarks at the time an argument is made, and for a considerable time afterwards, strongly indicates that the party ... did not consider the arguments objectionable at the time they were delivered, but made that claim as an afterthought.” Beccard v. Nevada National Bank, 99 Nev. 63, 65-66, 657 P.2d 1154, 1156 (1983), quoted in Ringle, 120 Nev. at 95, 86 P.3d at 1040.

Hernandez v. State, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002).

Ringle, 120 Nev. at 94-95, 86 P.3d at 1040.

Id. at 95, 86 P.3d at 1040.

See Gallego v. State, 117 Nev. 348, 365, 23 P.3d 227, 229 (2001).

Strickland v. Washington, 466 U.S. 668, 686-87 (1984); accord Lara v. State, 120 Nev 177, 179-80, 87 P.3d 528, 530 (2004).

Ringle, 120 Nev at 94, 86 P.3d at 1040.