# IN THE SUPREME COURT OF THE STATE OF NEVADA

SWAROVSKI RETAIL VENTURES LTD., A RHODE ISLAND CORPORATION,
Appellant,
vs.
JGB VEGAS RETAIL LESSEE, LLC, A DELAWARE LIMITED LIABILITY COMPANY,
Respondent.

No. 71618

FILED

APR 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER VACATING JUDGMENT AND REMANDING

This is an appeal from a district court order granting a preliminary injunction. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

Appellant Swarovski Retail Ventures, Ltd. (Swarovski), entered into a license agreement with respondent JGB Vegas Retail Lessee, LLC (JGB), to occupy a space at the Grand Bazaar Shops in Las Vegas. Swarovski sought to exercise its right to early termination, maintaining JGB violated the license agreement by failing to meet the co-tenancy requirements. Swarovski filed a complaint with the district court, seeking damages and declaratory relief to confirm that it properly terminated its license. In turn, JGB counterclaimed, alleging Swarovski's failure to provide "Value in Kind" per the license agreement and seeking specific performance.

One month later, JGB filed an emergency motion seeking to enjoin Swarovski from leaving the Grand Bazaar on the eve of the holiday shopping season. JGB contends that Swarovski is a unique anchor tenant that entered into a hybrid lease and cross-marketing agreement to make its

18-16108

Starburst Crystal a central attraction at the property, and further agreed to sponsor a daily event centered around the Starburst. After a nine-day hearing spanning almost a year, the district court granted JGB's request for a preliminary injunction based on Swarovski's sponsorship and the unique Starburst.

On appeal, Swarovski contends the district court abused its discretion by (1) granting injunctive relief, despite a lack of substantial evidence supporting irreparable harm, and (2) by concluding JGB would likely be successful on the merits of its claim based on erroneous factual findings.

## DISCUSSION

"A preliminary injunction to preserve the status quo is normally available upon a showing that the party seeking it enjoys a reasonable probability of success on the merits and that the defendant's conduct, if allowed to continue, will result in irreparable harm for which compensatory damage is an inadequate remedy." *Dixon v. Thatcher*, 103 Nev. 414, 415, 742 P.2d 1029, 1029 (1987). "Because the district court has discretion in determining whether to grant a preliminary injunction, this court will only reverse the district court's decision when 'the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" *Excellence Cmty. Mgmt., LLC v. Gilmore*, 131 Nev., Adv. Op. 38, 351 P.3d 720, 722 (2015) (quoting *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31

 

(2009)). "In an appeal from a preliminary injunction, this court reviews questions of law de novo." *Id.*[1]

*The district court abused its discretion by finding JGB would suffer irreparable harm*

The party seeking injunctive relief carries the burden of proving that there exists a reasonable probability of irreparable harm for which compensatory damages would not provide adequate remedy. *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 408, 23 P.3d 243, 246 (2001). Generally, when a tenant breaches a lease, the harm to the landlord is purely economic. In the context of commercial shopping mall leases, Nevada has long held that when a commercial tenant breaches a lease by closing a store, the resulting diminution in the mall's overall value is a foreseeable and compensable economic injury. *Hornwood v. Smith's Food King No. 1*, 105 Nev. 188, 190-91, 772 P.2d 1284, 1286 (1989). Damages attributable to such injury can "fairly and reasonably be considered as arising naturally" from a commercial lease, "or were reasonably contemplated by both parties at the time they made the contract." *Id.* at 190, 772 P.2d at 1286 (quoting *Conner v. S. Nev. Paving, Inc.*, 103 Nev. 353, 356, 741 P.2d 800, 801 (1987). Here, however, JGB argues that the harm it faces extends beyond economic damages and merits specific performance. We disagree.

Very rarely and in the context of commercial shopping mall leases, some courts have considered injunctive relief to enjoin the early departure of a tenant where landlords can demonstrate a tenant's

---

[1]As a preliminary matter, we hold that the October 19, 2015, letter from JGB to Swarovski constituted sufficient notice of default. Accordingly, we hold that the district court did not clearly err by finding that Swarovski received notice, on that date, of its alleged default under the terms of the parties' license agreement.

 

"irreplaceab[ility]" and the threat the tenant's early departure poses to "the very existence of the mall operation." *E.g.*, *Ctr. Dev. Venture v. Kinney Shoe Corp.*, 757 F. Supp. 34, 36 (E.D. Wis. 1991). However, as with all contract law, the terms of an unambiguous license or lease agreement expresses the parties' intent. *See Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004). The parties' license agreement defines their expectations. *See id.* Thus, in order for injunctive relief to issue in the context of a commercial lease, there must be evidence within the agreement that the tenant's importance to the project and the potential for irreparable harm upon early termination were "reasonably contemplated by both parties at the time they made the contract." *Hornwood*, 105 Nev. at 190, 772 P.2d at 1286 (internal quotation marks omitted).

This court need look no further for an example of such a provision than to the licenses issued by JGB to Wahlburgers and Giordano's, two other tenants of the Grand Bazaar Shops. The continuous operations clauses in the licenses issued to Wahlburgers and Giordano's read:

> Subtenant acknowledges that its continued operation of the Subleased Premises is of the utmost importance to the Project and to the other occupants thereof and to Sublandlord in the licensing and renting of space in the Project, the renewal of other subleases and license agreements in the Project, the maintenance of Percentage Rent and the character and quality of the other occupants [of] the Project.

In these continuous operations clauses, the landlord sets forth in clear language that the tenant's early termination would result in noneconomic and unquantifiable damage, such as the lessened "character and quality of the other occupants." Thus, the tenant is put on notice that its uniqueness

SUPREME COURT
OF
NEVADA

(O) 1947A

4

sets it apart from the other tenants and that economic damages may not sufficiently render the landlord whole upon the tenant's breach.

Here, in contrast, Swarovski's license contained a standard continuous operations clause with none of the particularized language demonstrated above. Moreover, under the terms of the license, Swarovski was allowed to terminate the lease early under certain conditions, and was thereby mandated to leave *with* the allegedly irreplaceable Swarovski Starburst Crystal. Even where the license outlined Swarvoski and JGB's sponsorship relationship—which the district court found was the basis for injunctive relief—there is no indication that JGB would suffer irreparable harm without Swarovski as a sponsor (or, even, that it could not leave the Starburst behind). Rather, the license states, permissively, "Swarovski has requested the right to be a sponsor" and "JGB is amenable to granting such sponsorship right to Swarovski."

"There is no better established principle of equity jurisprudence than that specific performance will not be decreed when the contract is incomplete, uncertain, or indefinite." *Dodge Bros. v. Williams Estate Co.*, 52 Nev. 364, 370, 287 P. 282, 283-84 (1930); *Mayfield v. Koroghli*, 124 Nev. 343, 351, 184 P.3d 362, 367 (2008) ("[S]pecific performance is available only when: '(1) the terms of the contract are definite and certain; (2) the remedy at law is inadequate; (3) the appellant has tendered performance; and (4) the court is willing to order [specific performance].'" (second alteration in original) (quoting *Serpa v. Darling*, 107 Nev. 299, 305, 810 P.2d 778, 782 (1991)). Here, we conclude that the parties' license agreement contains no provision that indicates Swarovski owed a duty to JGB to remain in operation such that, if Swarvoski left, it would irreparably harm JGB or the Grand Bizarre Shops.

"Courts cannot make for the parties better agreements than they themselves have been satisfied to make . . . ." *Reno Club v. Young Inv. Co.*, 64 Nev. 312, 324, 182 P.2d 1011, 1016-17 (1947). Thus, where, like here, a licensor does not include contractual language that signifies to the licensee that its breach would cause irreparable harm, a district court abuses its discretion by issuing specific performance. Therefore, we hold that the district court abused its discretion by finding that JGB faced irreparable harm and by granting injunctive relief to JGB in this matter.[2] Accordingly, we

ORDER the judgment of the district court VACATED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Douglas

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

---

[2]As we find the district court abused its discretion by finding JGB faced irreparable harm upon Swarovski's early termination of the license agreement, we need not address the parties' potential success on the merits of the underlying claims.

cc:    Hon. Elizabeth Goff Gonzalez, Chief Judge
Jay Young, Settlement Judge
Bailey Kennedy
Pisanelli Bice, PLLC
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

GIBBONS, J., with whom CHERRY and STIGLICH, JJ., agree, dissenting:

We respectfully dissent from the holding reached by the majority and would hold that the district court did not abuse its discretion by finding that JGB faced irreparable harm from Swarovski's early termination. "Because the district court has discretion in determining whether to grant a preliminary injunction, this court will only reverse the district court's decision when 'the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" *Excellence Cmty. Mgmt., LLC v. Gilmore*, 131 Nev., Adv. Op. 38, 351 P.3d 720, 722 (2015) (quoting *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009)). JGB argues it presented substantial evidence that it faced irreparable harm due to the "co-dependent relationship between JGB and Swarovski," including Swarovski's importance as tenant and sponsor during a "very delicate and 'critical juncture' of the project." We agree.

Because "[i]njunctive relief is extraordinary relief . . . the irreparable harm must be articulated in specific terms by the issuing order or be sufficiently apparent elsewhere in the record." *Dep't of Conservation & Nat. Res., Div. of Water Res. v. Foley*, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005). Based on the district court's "Findings of Fact," it appears the district court found JGB faced irreparable harm if it lost: (1) Swarovski's contracted "activat[ion], market[ing], advertis[ing], and promot[ion]" of the Grand Bazaar; (2) the nightly event put on by Swarovski; (3) the stability, notoriety, and attractiveness of the Swarovski brand, which would attract future tenants; (4) the unique crystal Starburst, characterized by both parties as the "crown jewel" and a defining feature of the Grand Bazaar;

 

and (5) the video created by Swarovski "underscoring the theme of" and promoting the Grand Bazaar.

Ultimately, we would hold that JGB provided substantial evidence of the economic interdependence between Swarovski and the Grand Bazaar and Swarovski's irreplaceability as a sponsor during the early stages of the project. As the majority indicates, the terms of an unambiguous license or lease agreement expresses the parties' intent. *See Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004). The parties' licensing agreement does highlight a unique sponsorship relationship integral to the Grand Bazaar's success and contracts specific performance as a potential remedy for default. Regardless of who initiated the cross-marketing relationship or whether JGB permissively allowed it, the relationship and its requirements were memorialized by the parties' agreement and belie argument by Swarovski that it was just another replaceable tenant. JGB provided to the district court an extensive summary highlighting the interwoven nature of the Grand Bazaar Shops and the Swarovski brand, particularly during the early stages of the venture, prior to the presence of Wahlburgers and Giordanos.

Additionally, JGB presented evidence that prospective tenants were informed of Swarovski's unique relationship with the Grand Bazaar as part of JGB's attempt to get new tenants on board with the project. Thus, current and future tenants were aware of Swarovski as the most visible tenant and sponsor at the time JGB sought preliminary injunctive relief. Moreover, the license agreement gives JGB complete automatic ownership of the Swarovski crystal if the agreement is terminated based on Swarovski's default and gives JGB the right to first offer of purchase, underscoring the crystal's importance to the venture. This and other

 

evidence filed under seal provide reasonable support for JGB's argument that if Swarovski, the Grand Bazaar's most visible and integral sponsor at the time of its proposed departure, "were to pick up and leave, it would be devastating at the very delicate and critical juncture of the project."

Harm alone is not enough, petitioner must also prove that the harm is not remedied by compensatory damages. *Excellence Cmty. Mgmt.*, 131 Nev., Adv. Op. 38, 351 P.3d at 722. Were Swarovski merely a tenant, injunctive relief would likely not be available to JGB as this court has already determined that the diminution of a mall's value from loss of a tenant is a calculable consequential damage. *Hornwood*, 105 Nev. at 190-91, 772 P.2d at 1286. However, *Hornwood* does not preclude injunctive relief in this matter because the district court granted injunctive relief based on Swarovski's contracted commitment to promote the Grand Bazaar as a sponsor. Additionally, JGB faced the loss of the unique Starburst Crystal, "considered the centerpiece and crown jewel of the [Grand Bazaar] and . . . central part of the identity of and draw."

This court has held that "acts committed without just cause which unreasonably interfere with a business or destroy its credit or profits, may do an irreparable injury." *Finkel v. Cashman Prof'l, Inc.*, 128 Nev. 68, 73, 270 P.3d 1259, 1263 (2012) (quoting *Sobol v. Capital Mgmt. Consultants, Inc.*, 102 Nev. 444, 446, 726 P.2d 335, 337 (1986)). This includes acts that damage a business' reputation. *Sobol*, 102 Nev. at 446, 726 P.2d at 337. Additionally, "[a] damages remedy is inadequate if it would come too late to save the plaintiff's business, or if the nature of the plaintiff's loss makes damages very difficult to calculate." *Mass. Mut. Life Ins. Co. v. Associated Dry Goods Corp.*, 786 F. Supp. 1403, 1415 (N.D. Ind. 1992) (citing *Classic Components Supply, Inc. v. Mitsubishi Elects. Am., Inc.*, 841 F. 2d 163, 165

 

(7th Cir. 1988)). Here, JGB presented evidence that (1) the Grand Bazaar was interwoven with the Swarovski brand and sponsorship; (2) that JGB's project risked a reputation as a failing business upon loss of that most visible sponsor; and (3) Swarovski did not have legal grounds to terminate. Additionally, JGB presented evidence that the sponsorship relationship with Swarovski and its crystal Starburst was so unique as to be irreplaceable prior to trial.

Finally, the order reflects that the district court considered the additional factors that generally dissuade courts from granting this type of relief. JGB requested a status quo preliminary injunction only through the holiday season or, alternatively, through the end of trial on the merits. Additionally, the district court weighed the comparative harm between the parties and found that Swarovski would suffer no significant harm from the rent-free injunction and requested a total bond of at least $400,000 from JGB. Based on all of these considerations, the district court's reasoning is "sufficiently clear" and not "clearly erroneous." *Clark Cty. Sch. Dist. v. Buchanan*, 112 Nev. 1146, 1150, 924 P.2d 716, 719 (1996). Accordingly, we hold that the district court did not abuse its discretion by finding that JGB faced the threat of irreparable harm upon Swarovski's departure prior to trial on the merits.

Additionally, upon reviewing the record, we hold that the district court's findings that JGB was reasonably likely to succeed on the merits of its underlying claims were not clearly erroneous for the purposes of a limited preliminary injunction hearing.[1] *See Buchanan*, 112 Nev. at

---

[1]As the parties are engaged in ongoing litigation on these matters, we decline to discuss the merits of the claims in greater detail at this time.

1150, 924 P.2d at 719. As such, we would disagree with the holding of the majority opinion and affirm the district court's grant of preliminary injunctive relief.

_____, J.
Gibbons

_____, J.
Cherry

_____, J.
Stiglich

---

However, we agree with the majority that the October 19, 2015, letter constituted adequate notice of Swarovski's alleged default.

SUPREME COURT
OF
NEVADA

(O) 1947A